IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| v. | § CASE NUMBER 1:20-CR-00078-3-MAC |
| | § |
| MARIUS LAZAR | § |

**ORDER ON DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF EXPERT AGENT JEREMY SCHEETZ**

Pursuant to 28 U.S.C. § 636 and the Local Rules of Court for the Assignment of Duties to United States Magistrate Judges, the district court referred to the undersigned United States magistrate judge for consideration and disposition Defendant's Motion for Rule 104(a) hearing to Exclude the Testimony of Expert Agent Jeremy Scheetz (doc. #73). The court held a *Daubert* hearing on this matter on October 20, 2023.

**I. BACKGROUND**

The First Superseding Indictment in this case alleges that the Defendant, Marius Lazar, is a member of the Hells Angels Motorcycle Club, a transnational outlaw motorcycle gang involved in drug trafficking, money laundering, arms smuggling, and unlawful violence, including murder. (Doc. #14.) It further asserts, in Count One, that the Hells Angels Motorcycle Club is a racketeering "enterprise" and that the Defendant was part of a racketeering conspiracy that participated in money laundering, murder, and drug trafficking. (*Id.*) The Defendant is also charged with committing conspiracy to import and expert cocaine and to manufacture and distribute cocaine in the United States in Count Two and conspiracy to commit money laundering in Count Three. (*Id.*)

1

In preparation for trial, which is set for November 6, 2023, the Government identified ATF Intelligence Operations Specialist Jeremy Scheetz as a "Hells Angels Enterprise Expert" who will testify pursuant to Federal Rule of Evidence 702 as to the structural features of this criminal enterprise as alleged in the First Superseding Indictment and as to whether certain seized items are associated with this criminal enterprise. (Doc. #73.) The Defendant is moving to exclude this testimony as not relevant nor reliable. (*Id.*) He also asserts that this testimony should be excluded as prejudicial pursuant to Federal Rule of Evidence 403. (*Id.*)

The Government filed a response to the Defendant's motion asserting that Agent Scheetz has specialized knowledge and experience qualifying him as an expert on outlaw motorcycle gangs, including Hells Angels. (Doc. #86.) The response also states that his expert testimony is relevant in that it will help the jury to understand the structure and operations of the Hells Angels gang, which operates by design with a degree of secrecy, and that it meets the criteria for a criminal "enterprise." (*Id.*) Further, the Government discusses Agent Scheetz's reliability in relaying this information to the jury, which includes application of his extensive experience using a compare and contrast methodology and the support of numerous sources. (*Id.*) Agent Scheetz also provided a curriculum vitae listing his qualifications, as well as a report outlining his opinions. (*Id.*)

## II. LEGAL STANDARD

Federal Rule of Evidence 702 sets forth the requirements that must be satisfied to enable a witness designated as an expert to testify to his or her opinions. An expert may testify in the form of an opinion if: (1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and

(4) the expert has reliably applied the principles and methods to the facts of the case. *See* FED. R. EVID. 702.

Courts use Rule 702 to function as gatekeepers when evaluating the admissibility of expert evidence and determining whether expert testimony should be presented to the jury. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591-93 (1993); *United States v. Valencia*, 600 F.3d 389, 423-24 (5th Cir. 2010). The following requirements must be met to admit expert testimony: (1) the expert is qualified; (2) the evidence is relevant to an issue in the case; and (3) the testimony is reliable. *Id.* The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence. *Andrews v. Rosewood Hotels & Resorts, LLC,* 575 F. Supp. 3d 728, 733 (N.D. Tex. 2021).

A full range of practical experience as well as academic or technical training should be considered in determining whether a person is qualified to render an expert opinion. *See United States v. Parra*, 402 F.3d 752, 758 (7th Cir. 2005). Experts are allowed the opportunity to form their opinion based on their experience in the profession. *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002). Overall, the trial court must strive to ensure that the expert, "whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Valencia*, 600 F.3d at 424. In the instant case, Agent Scheetz's expertise is based on his years of experience in law enforcement. While the advisory committee notes to Rule 702 make clear that experience alone may provide a sufficient foundation for expert testimony, the notes further explain:

> If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply "taking the expert's word for it."

> *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions, and their assurances of reliability. Under *Daubert*, that's not enough.").

FED. R. EVID. 702, Advisory Committee Notes (2000).

To be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Pipitone*, 288 F.3d at 245. For reliability, the court looks to the Supreme Court's non-exclusive list of factors: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Valencia,* 600 F.3d at 423-24 (citing *Daubert*, 509 U.S. at 593-95). These factors are not necessarily limited to scientific evidence and may be applicable to testimony offered by non-scientific experts who have "specialized knowledge" depending on the circumstances of the case. *United States v. Portillo*, 969 F.3d 144, 169 (5th Cir. 2020). "The reliability analysis applies to all aspects of an expert's testimony: the methodology, the facts underlying the expert's opinion, the link between the facts and the conclusion, et alia." *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 355 (5th Cir. 2007).

### III. DISCUSSION

An example of a non-scientific expert with "specialized knowledge" in the criminal context is a law enforcement expert who relies on their investigative training to testify about various topics, such as organized criminal enterprises. *Id.*; *Garcia v. United States*, No. SA-04-CR-425(17)-OG, 2010 WL 11613981, at *10 (W.D. Tex. Oct. 7, 2010) ("Expert testimony from law enforcement officials is proper 'to help explain the operation, structure, membership, and terminology of organized crime families.'") (quoting *United States v. Matera*, 489 F.3d 115, 121 (2nd Cir. 2007).

In *Portillo*, the Fifth Circuit affirmed the district court's decision to allow a law enforcement agent to testify about the Bandidos motorcycle gang due to his qualification "through years of investigation and conversations with insiders and outsiders, demonstrating that his understanding of the group was 'far above that of the general public.'" *Id.* at 168. The expert explained that his knowledge developed over the course of twelve years as an FBI special agent, which included eight years of working on a task force investigating gangs and five years investigating the Bandidos specifically. *Id.* at 168-69. He interviewed Bandidos members, reviewed documents, and collaborated with confidential informants. *Id.* at 169. Thus, the court found his testimony reliable and sufficiently supported and allowed him to testify about the organizational structure of the Bandidos and the roles of each national officer. *Id.*[1] The court did note, however, that the agent could not give any opinion on the guilt or innocence of any defendant or their mental states.[2] *Id.* at 169-171. Moreover, the court found that any potential prejudice caused by the agent's expert testimony was minimized by the fact that he was not the case agent who investigated these particular defendants. *Id.* at 170. Therefore, there was no concern that he was taking on the dual role of both an expert and fact witness in the case. *Id.*

Likewise, in *United States v. Washington*, 44 F.3d 1271, 1283 (5th Cir. 1995), the Fifth Circuit affirmed the qualifications of two government agents who testified as experts about "the significance of certain conduct or methods of operation unique to the drug distribution business."

---

[1] Other circuits have similarly affirmed the qualifications of experts who use their law enforcement training to gain an understanding of criminal groups. *See, e.g., United States v. Rios*, 830 F.3d 403, 413 (6th Cir. 2016); *United States v. Kamahele*, 748 F.3d 984, 998 (10th Cir. 2014); *United States v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008); *United States v. Van Dorn*, 925 F.2d 1331, 1338-39 (11th Cir. 1991).

[2] Rule 704 states that in criminal cases, "an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charges or of a defense. Those matters are for the trier of fact alone." FED. R. EVID. 704(b).

The court noted the agents' investigative training as reliable and relevant in testifying on these matters. *Washington*, 44 F.3d at 1283.

In this case, the parties do not dispute that Agent Scheetz is qualified[3] to speak about outlaw motorcycle gangs, including the Hells Angels, given his 17 plus years of experience in law enforcement as an ATF Intelligence Operations Specialist, ATF Intelligence Research Analyst, and ATF Critical Information Specialist. The parties do, however, dispute the relevance and reliability of his testimony in this case.

**A. Relevancy**

Regarding the *relevancy* of law-enforcement expert's testimony, the court must assess whether, "without expert testimony, the average juror is unlikely to understand" the material about which the expert proposes to testify. *United States v. Rios*, 830 F.3d 403, 413–14 (6th Cir. 2016). In the context of a RICO case, the government must prove that an "enterprise" existed. The statute defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). For an association in fact, the Government must show that the group has: 1) a purpose; 2) relationships among those associated with the enterprise; and 3) longevity sufficient to permit these associates to pursue the enterprises' purpose. *United States v. Jones*, 873 F.3d 482, 490 (5th Cir. 2017) (citing *Boyle v. United States*, 556 U.S. 938, 944–46 (2009)); *see also* 18 U.S.C. § 1962(c)–(d) (requiring a violator of RICO to be employed by or associated with an enterprise that is engaged in or whose activities affect interstate or foreign commerce).

---

[3] In *Nelson*, a district court in California found that Agent Scheetz was qualified as an expert on outlaw motorcycle gangs and the Hells Angels by virtue of his knowledge, skill, experience, training, and education, which includes 250 investigations, 100 debriefings, seized evidence analysis, discussions with other officers, and listening to jail calls and wire intercepts. *United States v. Nelson*, No. 17-CR-533, 2021 WL 75757 (N. D. Calif. Jan. 8, 2021).

Examples of relevant expert evidence in these types of cases include testimony of the inner workings of organized crime, such as the structure, organization, and rules of the entity because such matters are generally beyond the understanding of the average layman. *Portillo*, 969 F.3d at 169-170; *Rios*, 830 F.3d at 413; *see also United States v. Kamahele*, 748 F.3d 984, 998 (10th Cir. 2014) (gang expert testimony was helpful to the jury where expert would provide "expertise about [the gang's] structure, insignia and history," "[a]nd the district court could have assumed that a typical juror would lack knowledge of the gang terminology and the significance of [the] insignia").

Moreover, the Northern District of California specifically considered the admissibility of Agent Scheetz's expert testimony as to the Hells Angels Motorcycle Club in a similar case involving a RICO conspiracy in that district. *United States v. Nelson*, No. 17-CR-533, 2021 WL 75757 (N. D. Calif. Jan. 8, 2021). In *Nelson*, the court found that Agent Scheetz's testimony regarding the topics of gang symbols, terms, and territory are traditional areas in which a gang expert can testify and is expected to help the trier of fact to understand the evidence or to determine a fact in issue, and they are therefore generally relevant under *Daubert*. *Id.* at 8.

At the hearing on this matter, the Government elicited testimony from Agent Scheetz showing that he would be opining at trial as to the Hells Angels' purpose, its organization, structure, meetings, locations, rules, initiation process, use of violence, drug trafficking, and its characteristics worldwide. The Defendant argues that Agent Scheetz's testimony is not relevant because he does not have specific knowledge regarding the Romania charters of Hells Angels, which the Defendant is alleged to be a founding member.

The Government responded that it is not necessary for Agent Scheetz to be an expert on the specifics of the Romanian charter. The Government is alleging that Hells Angels is one large

7

transnational gang, or "enterprise," that operates in several countries including the United States, New Zealand, Romania, and Germany. Further, the Government argues that it need not prove that the Defendant was a member of the gang—only that he "associated" with the Hells Angels. *See* 18 U.S.C. § 1962(c)–(d) (requiring a violator of RICO to be employed by or associated with an enterprise that is engaged in or whose activities affect interstate or foreign commerce). The undersigned agrees.

The Indictment alleges that the Defendant and others conspired together to commit various criminal acts, which involved communications, travel, transfer of funds, and the export of drugs and firearms to and/or from Beaumont, Texas, as well as Romania and New Zealand. (Doc. #14.) Further, the enterprise is alleged to have used Beaumont, Texas as the base for receiving payment for the enterprise and fabricating machinery to conceal and export illegal drugs from the United States to New Zealand and Romania. (*Id.* at 11.) Agent Scheetz testified that Hells Angels operates worldwide with the same logo (used as a patch on their clothing), operates under a set of World Rules, and has World Meetings. He stated that he has attended at least one of these World Meetings and has traveled abroad for other Hells Angels meetings and events and regularly consults with foreign law enforcement regarding foreign charters of Hells Angels. The Government asserts that Agent Scheetz will testify generally about the overall structure of the Hells Angels gang, as opposed to the specifics of the Romanian charter and Lazar's involvement in such. Accordingly, the court limits his testimony as such.

### B. Reliability

A gang expert's testimony on the above relevant subjects is *reliable* if it is based on significant experience with the gang about which the expert is testifying. *See, e.g., United States v. Norwood*, 16 F.Supp.3d 848, 861–62 (E.D. Mich. 2014) (noting that gang expertise "usually

8

arises from the officer's significant experience investigating a particular gang" and concluding that a proffered expert would be unreliable because the expert had not been involved with the specific gang at issue). Moreover, as stated above, the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. FED. R. EVID. 702, Advisory Committee Notes (2000).

Here, Agent Scheetz's curriculum vitae and testimony show that he has significant experience in investigating (over 1,000 cases) and dealing with outlaw motorcycle gangs, including specifically the Hells Angels Motorcycle Gang. (Doc. #86-2.) He testified that he confers daily with law enforcement on the state, federal, and foreign level; reviews documents prepared by law enforcement and documents seized by them; has direct contact with members and associates of outlaw motorcycle clubs including over 100 interviews with current and former associates of the Hells Angels; has attended 50-75 Hells Angels event and 150-200 other motorcycle gang events; has observed Hells Angels clubhouses; listened to 45-50 jail calls and wire taps involving the Hells Angels; monitors social media regarding the Hells Angels; provides training regarding motorcycle gangs; has reviewed photographic evidence; and has read numerous articles and literature on the Hells Angels and other motorcycle gangs.

Further, Agent Scheetz uses a reliable method of comparing and contrasting information to develop his expertise on these matters. Essentially, he describes this analysis method as a gathering of new information from various sources and then comparing and contrasting it against what he already knows from his previous investigations, observations, discussions with others, and research.

9

In *Nelson*, the court found Agent Scheetz's compare and contrast methodology reliable.[4] *Nelson*, 2021 WL 75757, at *9. The court stated that law enforcement expertise depends heavily on knowledge and experience and held that Agent "Scheetz has demonstrated the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* The court noted that some of the information upon which he relies is not written down or memorialized (such as his conversations with other law enforcement, what he has observed at gang events, or interviews of others), but that it is of the type normally obtained in day-to-day police work, and therefore it is reliable methodology. *Id.* at 10. The undersigned agrees.

As to the application and basis of Agent Scheetz's testimony, the *Nelson* court also generally found his methods reliable, and his opinions supported by an adequate factual basis. *Id.* at 10-11. The undersigned agrees with that conclusion here as well. In addition to his expert report, the Government provided a Declaration of Agent Scheetz and 21 supporting exhibits that were likewise produced in the *Nelson* case. (Doc. #90.) These documents include: a historical article; the 2017 World Rules; charter rules; Hells Angels corporate property agreement; an agreement to cover up all Hells Angels tattoos; list of charters that attended a world meeting in 2011; a search warrant affidavit indicating Hells Angels members were in a physical altercation with another motorcycle club in 2008; a purple heart certificate for a member defending his club; a charter certificate; "out of club" list with photos of ousted members; a narrative detailing undercover agents and informants intel regarding an assault between Outlaws MC and the Desperados, a Hells Angels affiliate; bylaws and rules; new prospect form, article about "left and out;" World Bylaws for Prospects; multiple San Diego Sheriff's reports and numerous articles

---

[4] Although *Nelson* is not binding precedent, the court finds it persuasive given the fact that the district court held three *Daubert* evidentiary hearings, each lasting three to four hours long, and did a detailed analysis of Agent Scheetz's qualifications, methods, and proffered opinions, which are very similar to, if not the same, as those offered in this case.

10

regarding crimes committed between other club members and the Hells Angels; and meeting minutes. (Doc. #90.) Based upon the documents submitted and his testimony, the court finds adequate and reliable support for Agent Scheetz's statements in his report, excluding those the court discusses below.

The *Nelson* court excluded a few statements/opinions by Agent Scheetz as unsupported. In this case, the Government has agreed to exclude those same statements (the second sentence of paragraph 11, the last sentence of 20(b), and the entirety of paragraphs 12, 13, 15, 16, & 23 in doc. #86-1).

With respect to paragraph 31, the Government argued to the undersigned that it was reliable here although it had been struck by the *Nelson* court. Paragraph 31 states, "[t]he HAMC has been involved in violent confrontations with rival motorcycle clubs, including the Mongols, the Outlaws, the Pagans, and the Banditos, over territory and other disputes." (Doc. #86-1, at 7.) In *Nelson*, this opinion was excluded along with a list of over 60 violent incidents between gangs as insufficient to support the notion that these disputes were "over territory" and as prejudicial under Rule 403, because of the undue delay it would cause at trial for the Defendant to refute these 60 plus incidents with rebuttal evidence. *Nelson*, 2021 WL 75757, at *13-14. Here, the Government did not set forth the same list of violent incidents in Agent Scheetz's report, just the overarching opinion listed in paragraph 31. At the hearing, the Government ultimately agreed to remove the clause regarding territories. The court finds the statement reliable and supported excluding that last phrase— "over territory and other disputes." Therefore, Agent Scheetz can testify as to paragraph 31 excluding that phrase.

11

### C. Hearsay and the Confrontation Clause

Generally, an expert is not permitted to testify as to hearsay information acquired during said expert's investigation that forms the basis for the expert's opinions and conclusions. *Sells v. Thaler*, No. CIV. SA-08-CA-465-OG, 2012 WL 2562666, at *63 (W.D. Tex. June 28, 2012) (citing *United States v. Mejia*, 545 F.3d 179, 194–96 (2d Cir. 2008) (holding it was error to permit a law enforcement officer to testify about factual matters revealed in a task force investigation into a specific criminal gang's activities or about matters the average juror could have understood based on the factual information itself, rather than more broadly about interpreting jargon and coded messages)). It is inappropriate for an expert to simply transmit rank hearsay information to the jury without forming an opinion based on his extensive experience and a reliable methodology. *Id.* Rule 703 states that an expert may rely on facts or data that are inadmissible themselves if experts in that field would reasonably rely on them in forming an opinion. FED. R. EVID. 703. However, the expert may only disclose those inadmissible facts if the value to the jury outweighs their prejudicial effect. *Id.*

Although not set forth in his motion, at the hearing, the Defendant generally argued that some of the sources relied upon by Agent Scheetz, such as documents seized, other information from law enforcement, former/current gang members' interviews, etc. are hearsay and implicate the confrontations clause. Agent Scheetz testified that he relied on a variety of sources, including interviews of current/former members of Hells Angels and discussions with law enforcement; however, he did not mention or related any specific conversations. Instead, he asserted that these sources were used in his overall understanding and expertise of how this entity works and operates. *See Kamahele,* 748 F.3d at *1000 ("we are hard-pressed to find testimony by Officer Merino that

simply parroted a testimonial fact learned from a particular interview. Like the district court, we conclude that Officer Merino applied his expertise, formed by years of experience and multiple sources, to provide an independently formed opinion."); *see also Nelson*, 2021 WL 75757 at *16-17 ("Scheetz's disclosure of facts taken from arrest reports does not constitute excludable hearsay since he is 'not imparting' information gleaned from the report 'for its own sake, but to explain the basis for his expert opinion'" that . . . "HAMC is a violent charter."). Agent Scheetz's testimony as set forth in his report or at the hearing does not constitute rank hearsay. Instead, his testimony relates facts and opinions synthesized by all the information known to him.

The Defendant also states that Agent Scheetz's report contains only facts, not opinions. However, these types of historical facts and information about motorcycle gangs are an accumulation of information he has learned over the course of his entire career in investigating, researching, interviewing, etc. them, and is being used to explain the structure, organization, purpose, and history of the entity, which courts have allowed as discussed above.

For example, in *Portillo*, the court noted that the expert was not just testifying as to easily verified facts or purely factual matters as to the *charged crimes*, he was instead speaking of historical crimes, etc. by the motorcycle gang to give the jury context and an understanding of how the organization operated. *Portillo*, 969 F.3d at 169-170. The court found it of importance that the expert at issue was not the case agent who investigated the actual defendants in the case thus eliminating any prejudice in him being both a fact witness and an expert witness. *Id.* Like the court in *Portillo*, the undersigned finds that Agent Scheetz's proffered opinions are not rank hearsay or purely factual matters easily verified by the jury.

**D. Prejudice per Rule 403**

Rule 403 states that the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. This rule should be used to exclude evidence only "sparingly." *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir. 1993).

The Defendant asserted this argument in his motion generally without reference to anything specifically prejudicial about Agent Sheetz's proposed testimony. At the hearing, he also did not assert any arguments as to this issue. As such, the court will not address this issue at this time, but the Defendant may re-assert any concerns he has as to a specific opinion by Agent Scheetz at trial.

## IV. CONCLUSION

For the reasons discussed herein, the court GRANTS IN PART and DENIES IN PART the Defendant's Motion to Exclude the Testimony of Agent Scheetz. (Doc. #73.)

As stated above, Agent Scheetz may not testify regarding the specifics of the Hells Angels Romanian Charter or Lazar's direct involvement with the Romanian Charter. He can, however, testify "generally" as to how Hells Angels operates globally.

Further, the opinions in the following paragraphs are excluded from Agent Scheetz's report and testimony at trial: the second sentence of paragraph 11; the last sentence of 20(b); and the entirety of paragraphs 12, 13, 15, 16, & 23. (Doc. #86-1.)

In addition, the opinion in paragraph 31 is revised as follows: "[t]he HAMC has been involved in violent confrontations with rival motorcycle clubs, including the Mongols, the Outlaws, the Pagans, and the Banditos." (Doc. #86-1, at 7.)  Agent Scheetz may not opine at trial that these confrontations were "over territory."

**SIGNED this the 25th day of October, 2023.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE